Alright, the second case we're going to hear today is VCA Cenvet versus Chadwell Animal Hospital, and Mr. Casey, just whenever you're ready, we'll hear from you. Good morning, Your Honors, and may it please the Court. My name is Brian Casey, and I'm here on behalf of Appellant Antec Diagnostics. There are two distinct issues in this case. First is, did the District Court err in granting Chadwell's motion for summary judgment? And then second, did the District Court err in denying Antec's motion for summary judgment? As the Court is well aware, cross-motion for summary judgment require a District Court to treat each of these motions separately, giving the non-move-on in each instance the benefit of reasonable inferences when deciding summary judgment. From our perspective, the Court also erred at a minimum in granting Chadwell's motion for summary judgment. Antec believes further, though, that given the record, the District Court erred also by denying Antec's motion for summary judgment. Well, why, just to get on that point, it seems to me it might be a little overreaching in respect to your argument, because one argument that you can make is that the 29 percent variable cost is evidence, is establishing evidence of cost, and could be a determinator of profits. But you also deny them the opportunity to cross-examine to determine whether that 29 percent figure would be applicable in these circumstances, whether they are well-developed and consistent with accounting principles and so forth. And it seems to me if there's a question as to what profits there are, you would have to allow a full development of the facts about those expenses, as well as what I respectfully submit are fixed expenses. I don't know why and how you guys can exclude fixed expenses. I've never heard of a corporation that can develop a profit and wipe out its fixed expenses. Well, Your Honor, you've asked several important questions, and I'll give you a chance to try to distill them. But you're absolutely correct that it is important to view the evidence that Antec proffered in defending itself against Chadwell's motion for summary judgment in a different light than the evidence, the same evidence, that Antec proffered in support of its own motion for summary judgment. And as we stated, we would certainly submit that the evidence with respect to defending itself against Chadwell's motion for summary judgment is sufficient to withstand summary judgment. We have introduced substantial evidence of our lost revenues, of our operating expenses, both variable and, if the Court were inclined to have this discussion, a justification for why fixed costs were You just want the incremental charges expensed to you, even though you've been losing money for 10 years, based on, this is hypothetical, even though you've been losing money for 10 years when you include variable and overhead, variable costs as well as overhead costs. And you would come in and say, I'm entitled to profits on these sales because these particular sales wouldn't have made any difference if I didn't have them or did have them. That isn't the test. The test is, if you have overhead, you apply it to every dime that's incurred in order to know whether you were profitable. Because otherwise, then the last transaction will carry all the overhead in the company. Well, Your Honor, that would be an argument, or that is, in fact, one of the arguments that Chadwell made. And were there perhaps some kind of Well, why don't you answer it then? We know what arguments they made, but why don't you answer that argument? We believe, and as our CFO or Vice President of Finance Just answer it. Just answer it. Tell us the answer to the question. The answer to the question, Your Honor, is the net profit, which is the way that damages are calculated, is the difference between the incremental amount that I lost in revenue for you breaching the contract I know what you assert it is, but you're not answering the question. I take it your argument is this, that you have presented enough testimony so that the other side is not entitled to summary judgment because you put some information out there to show, if you get the facts like you did have lost expectation profits, correct? That's your argument. On the other side, they assert that what you've put forward is not enough as a matter of law to establish damages for you, correct? That is what they assert. Right. So in fact is, what do we do? Let's focus just for a second on fixed damages. Is the fact, how do you respond to this? The fact that you have not applied any fixed damages, fixed cost to your profit assessment, why isn't that alone enough to say your profit projections are just wrong as a matter of law? Because that's simply argument that they have made as opposed to No, but I'm asking you, why isn't that so? Because there isn't a California case that says that level of granularity is necessary in order to establish a prima facie But that's not the question I'm asking, maybe I'm not being clear. Have you set out with enough specificity your lost expectation profits? If you haven't figured in your formula fixed cost? Yes, we have. How under law can you do that? Because there isn't law that says that lost profits are only established, only need to be established with reasonable certainty. And lost future profits are by definition the product of estimates and assumptions. No, but there's a difference between applying a formula that is completely acceptable and coming to an approximation and applying a formula that in itself is flawed. Do you understand that distinction? I understand that distinction. I don't think that is a distinction that is found in California case law. They simply say you need substantial evidence of your lost profits. We have substantial evidence of our lost revenues. Nationwide, but not as to operating under this agreement with Chadwell. You don't have any evidence that the costs were at all comparable to those nationwide figures, do you? In other words, you could have a situation where Chadwell, because it's an East Coast company, you were trying to expand your market there. It was much more expensive to service somebody because of transportation, of testings, materials, whatever. But you were willing to do that and not make profit in order to get other businesses to come on board, thereby lowering the costs of servicing all of them. We don't have a clue in this case as to whether the costs that you presented to the court bear any relationship to the costs that were incurred in providing the testing services to Chadwell, do we? And that is a question that might go to the weight of the evidence that we have admitted. Don't you have to, though, say that there is some comparability? Otherwise, your answer has to be, well, I can speculate because this is summary judgment. I have to prove a trial, but we can speculate because they have these profits nationwide that there have got to be profits as to our dealings with Chadwell. And we'll prove them later, but it's got to be. Isn't that really your argument? No, it isn't, Your Honor. Why not? It's not simply speculation. It is the testimony of our Vice President. Right, but he just testified nationwide. He didn't test about servicing Chadwell and whether the costs related to Chadwell were in any way comparable to the costs related to those nationwide statistics. And that is not a level of granularity that is necessary. Why is that granularity? Given the example that I gave you, Chadwell could be the outlier. They could be taking a loss. Companies do take losses servicing clients in order to build their markets in different areas. And so it seems to me you're essentially saying, trust us, we'll prove it later, we'll give you the nationwide scope now, and we're not giving you anything with regard to Chadwell now, but we'll show that later. California case law is replete with instances of much more general calculations of lost profits than we have here. I think generally damages law may go your way on that. It seems to me anything in the four-year contract, whatever it is, is all speculation. And what the cases suggest is you can look at your past profitability and project it into the future. But if you're going to do that, you have to actually focus on profitability. And profitability would be the difference between gross revenue and would be the net revenue you obtain after you've paid all your expenses in the company. You can predict, based on 10 years' performance, that you have 29% fixed or variable expenses, that you have 11% of whatever it is of fixed expenses, and that your profit has been 3% of your gross revenues. Now it seems to me that would be a legitimate basis to say for every dollar I lost from Chadwell, I get a 3% profit. But I don't think you can cherry pick and say I'm going to put in some expenses and not others as a predictive mechanism. In other words, you're trying to predict in the future as to what your profitability will be from these sales. It's very, very common and very, very easy to prove whether sales are profitable or not. You just look at your books and you project them. And I don't know whether you put in the fixed costs in this case. You did put in your variable costs. But I don't think if you're going to do it that way, and I think you personally, I think you have to do it that way, you don't take customer by customer and figure out which one's profitable and which one's not. If you're losing future profits, you take how the company has done generally. Well, a couple answers. I guess I would say, first of all, when we are calculating future profits, I don't think the case law is that it's speculative. It is because you don't even know if you're going to be in business next year. You could be bombed out, you could have an earthquake, you could, there's tons of things. You are speculating about what's going to occur in the future. We are making reasonable estimates and projections. Sure, they're estimates. That's what we're trying to do. And the rationality of it is demonstrated by looking at past conduct. Absolutely. And so you look at your books and you show for each year we have had increasing revenue, and you have a line that goes up to gross revenue. And then you subtract from the revenue your expenses. And that can be based on historical experience, too. You know what your expenses are going to be because you've already incurred them. And then you subtract one from the other and you say, our profits have been going up 1%, 2%, 2%, 3%. And we show that. You might even try to claim 4% and let the jury try to do that. But you've got to put in the data from which you can include real profits, not just incremental losses of income. We have introduced the evidence of our revenues with respect to these particular, with respect to this particular client, both in terms of a year of actual experience and eight months then when they were with the client. You have the revenue stream in there. Right. Then with respect to the expenses on the other side of the ledger, we have introduced evidence of what our variable costs are. You did 29%. We did 29%. We have testimony from the person most knowledgeable about it. Subtracting 29% from your gross revenue does not give you profit. Your company has to pay for the managers. It has to pay for the electricity. It has to pay for the advertising. And what Mr. Bargmann stated in his deposition testimony, which is why we think this, you know, it may well be the appropriate answer. Just answer the question. What do you do? The question is, goes back to the very question I asked you to start with. What do you do with the fact that fixed damages are not in fixed costs, are not included in your formula? Does that mean you still have made a reasonable presentation? Or does that mean as a matter of law, what you have presented is just not sufficient? Isn't that what it comes down to? It is a reasonable presentation, Your Honor. If people want to have a different calculation of lost damages, they are welcome to introduce that. They didn't. But certainly... It would be a windfall. It wouldn't be a windfall, Your Honor. If you took the gross revenue that you're projecting from this company, Chadwell, and subtracted only the direct cost for getting those, you're overlooking the other costs of the company. The testimony of Mr. Bargmann is that the remainder of those, the fixed costs, are immaterial with respect to this one. Of course they will be if you allocate them all to the later transactions. In other words, you can't allocate overhead to one company and not to another. Well, we would submit that the way you calculate lost profit is by looking at the difference between the damages are the lost revenue less the expenses attributable to that client. And what he said is, fixed costs for... Not if it's lost profit. If you're claiming lost profit, you cannot claim lost profit or we'd be giving you a windfall. Because if your overhead ate it all up and you were actually losing money when we consider your fixed expenses? Well, there isn't any evidence of that in the record. I know, but it tests your theory. Let me ask you this, just as an aside. Have you put in a percentage of fixed expenses? Absolutely, Your Honor. If you can bear with me for a second. The chart on page 337 identifies both the fixed and the variable operating costs. So that's 337 and 342. It identifies what the fixed costs and the variable costs. Your witness said this, I don't care about fixed costs because that's paid for by other clients at this point. That's what he said. He also said it because it was immaterial with respect to the... Well, that's why it would be immaterial. What he said, no, no, no. What he said, the incremental cost to deal with this person would be incremental or meaningless. Isn't that what he said? He said the incremental cost... Listen, let's not argue about semantics. The point is, am I right or wrong on what he said? I didn't figure in fixed costs because that's paid for already, that's covered by other people, and whether or not I do business with these people, I've got those costs covered. Isn't that what he said? That is among the things he said. He also said it was immaterial. But yes, you're absolutely right. They have to pay for their... Now, let's wait. That's why he said it was immaterial, because it's not material to how much money... His theory is, it's not material as to how much I'm going to make on this client because those costs are covered, and to add more lab work really doesn't add any cost to my fixed cost. Isn't that right? I believe that's what Mr. Bartlett... That's what he said. But so the question still comes back to this one thing. If in fact... So you're telling us that a jury could look at these facts because maybe nothing else will be presented to the jury if it goes forward. Nothing else has been presented. Presented on these facts, you say that if the jury were to disagree with your assessment of how you figure damages, and they decide fixed costs must be included, there is a number in the record that they could add to the 29% or whatever to figure out the fixed cost. I believe so, Your Honor. I believe that's on the... In the joint appendix, page 337, factors out... And 342. Let me ask you about that. It says operating income. Are there any other costs that have to come off of there to determine profit? How about financing? There are no financing costs if you go back into the 10K. Those aren't broken out. In other words, this seems to suggest that you get 37% of your revenue is profit? I believe that's correct. I'm looking at page 337. I apologize, Your Honor. I don't have the record in front of me. I just have the sites. Well, you know what the rough numbers are. Yeah, it's that approximately. Yes. What is in the record is what we believe that... There's no other cost after that? In other words, that is your profit? That is how we have calculated our profit, yes, Your Honor. Well, is that your profit? Your Honor, I think as we're seeing... I mean, these are historical numbers you're giving us. 2010, you have... In your answer, yes. In your answer, yes. I believe it is, Your Honor, but... On this record, in your answer, yes? Yes, it is, Your Honor. Awful high numbers, but that's your testimony that that is what your profit is, the profit margin. That is correct, Your Honor. And you think that's enough to defeat their summary judgment? Absolutely. But why is that enough for you to win as a matter of law? Because there isn't any evidence on the other side. They opted not to produce a different damages calculation with respect to lost profit. And Your Honor, I see my time's over. I'm happy to continue to discuss this, but I leave it up to you. All right. Well, you've got five minutes left, and you can recoup. Mr. Burton. Ms. Burton. Excuse me. Megan Burton. Good morning, Your Honors. May it please the Court. Megan Burton on behalf of Chadwell Animal Hospital, LLC. I just want to say at the beginning that at the core of this case, it's a very simple contract, one that required Chadwell to use Antec for four years, and if it did so, it would receive rebates in the form of a 17% reduction. To use them exclusively for four years? Correct, Your Honor. And if it did that, it would receive rebates in the form of a 17% reduction on its monthly invoices. It's also important to keep in mind that they had already been doing business with Antec for over six years before this contract was signed. There are three valid reasons for affirming the District Court in this case. We've already talked a little bit about lost profits already, but the other two issues are the liquidated damages clause and the unconscionability of a lost profit award of the amount that VCA or Antec is asking for. That's a peculiar argument you're advancing. You're saying they claim $200,000 in damages. That's unconscionable in this circumstance. Therefore, you get nothing. No, Your Honor. We're not saying— They get their rebates, which is their reliance interest. Well, that's just for the discount. But they'd get nothing in terms of profit, you're saying. No lost profits. They'd get no expectation profits. Correct. They'd be getting the reliance for restitution. So you look at an ad damnum in a complaint, and somebody's asking for $23 billion, and they're only entitled to $20 million. They get nothing? Depending on the facts of that case, Your Honor, I'm not sure I understand. Well, the fact is that the billions of dollars are outrageous. I mean, it doesn't follow that because what they're claiming is outrageous, you then penalize them. No, Your Honor. It's not the amount itself. It depends on the circumstances. Except that's what the court said. I think the court was looking at the parties, too, and the bargaining inequality between Antec, a huge company— You can claim anything you want in an action. If you can't prove it, you can't prove it. But the fact you claimed it does not Correct, Your Honor. Well, plus the court was caught up on this concept of double recovery, wasn't it? Well, you know, too bad for Chadwell. I mean, if they made a deal that said, we're going to pay you, and if Antec can prove their lost profit expectations, then how is that possibly unconscionable? Parties reaching an arm's length agreement, intelligent people on both sides, what's the problem? I think the issue really is there's an overlap between the liquidated damages clause, as we've argued, the lost profits and the lack of proof thereof, and unconscionability in the sense that damages of lost profits were not contemplated when the parties entered into this agreement. The contract refers to rebates. It contains a remedy provision— What do you think H-270 means? You think they're doing that? You think that the other side has signed a contract where you're required exclusively to deal with them just so they can give you rebates? You don't think that, do you, really? They had already been doing business for six years. I'm saying, but they entered this contract after that six years. Your argument is that they entered this contract requiring exclusivity on our part just so they could give us rebates? That's correct, Your Honor. Okay, you have another argument on something else you want to make, then, because— Why don't we talk about the profits business? Why isn't Exhibit 5 on page 337 sufficient evidence at least to go to the jury on what their profits are? Your Honor, California law, contrary to what Antec has presented to the court, California law requires that to get lost profits, you have to show your fixed and variable operating expenses. That exhibit shows them both. The exhibit is insufficient because it doesn't show anything related to performing this specific contract with Chadwell. That isn't the way bookkeeping is kept in a company. Most companies don't go contract by contract and break them out. They look at the month, how much revenue did we get? They look at their expenses, and they've fixed expenses. They subtract them, and they said that for the month, that was our profit. And they say, we expect to get the same profit next month. And that's what they are arguing in this case. For three years, they say we expect to get X profit. Now, what's wrong with that? Your Honor, the problem is— You can cross-examine. You can put in a countering evidence. You can pull up their documents. They keep records, don't they? They have accounting records. And you can examine those and say, well, you failed to include this. You included this. But for their purposes of establishing lost profits by putting revenue in, and everybody seems to agree the revenue is pretty well established with respect to Chadwell. And the only question is, did they put in enough for a jury to conclude what the profits are? And I don't think you're—I don't think Mr. Robinson made the argument directly, but he does have the evidence in the record here, in the summary judgment record, that shows the fixed cost and the variable cost, Mr. Casey. Mr. Casey, I apologize. I'm reading my little crib sheet here for the first case, and you're Mr. Casey, and I recognize that. The problem, again, Your Honor, is that, and Judge Keenan touched on that point, you could be—Chadwell could be—Antec, I'm sorry, could be performing a contract, and again, it performs over 16,000 of these similar service agreements all over the country. And each one is different. Each one has different pricing, but at summary judgment, why isn't that at least a reasonable inference that it's uniform across their clients, a reasonable inference that the other side is entitled to at summary judgment? Because it fails to meet California law's requirement that the evidence that the lost profits be established— But just let me say this, though. But at summary judgment, isn't that a federal standard on what's required for summary judgment? It's not what the state of California requires for summary judgment. The summary judgment standard is absolutely the federal requirement. And we look at the federal standard of what evidence is enough to make out a claim. Correct, Your Honor. I'm only saying that the underlying law that we are talking about here, California law, and in terms of the proof required for establishing even just sufficient evidence to withstand motion for summary judgment under the federal rule— Okay, yeah. What California says about how you defeat and what's required for summary judgment, honestly doesn't matter. I didn't say that here, but it does. No offense to anybody. I'm not saying that it does, Your Honor. I'm only saying that it's lost profit requirement. But they put in—you may disagree with it, but they put in numbers on what their revenue would be, and although they focused only on variable costs, there is at least that one document that points out fixed costs. So why couldn't— And it shows profitability, at least from this document, of 37.3 percent on sales. So we're looking into the future. Can't they say to a jury, we expect to receive 37 percent profit on the sales of this contract? Because again, that has nothing to do with performing for child wealth. It's not— No company keeps it on. I mean, does this mean Walmart keeps each transaction, whether they made money at the cash register with customer A or customer B or a particular store? There's a profit center at the store, but they still have the overhead and expenses, and it may be contributing to a loss or may be contributing to profits. But the only way you can determine that is it's the company that's hurt. It's not the particular transaction that's hurt. Of course, the breach contract is measured by the way they keep books, right? And you can cross-examine. You can point to the jury, oh, this is their company-wide. They're profitable company-wide, but this localized transaction, they're not going to get a profit on. I suppose you could try to prove that, but the question on summary judgment is can't they use company-wide figures to project profits? Again, Your Honor, they're making an assumption that the specific profits that they would have of that figure in performing for Chadwell. Not that it necessarily determines the case, but is there any evidence in the record that Chadwell would not fall in the normal category of their clients? In other words, if you offered any, is there any evidence in the record offered by them or you to suggest that Chadwell doesn't fall within the normal range of their clients? No evidence was produced on that either way. Well, wouldn't that then call for a trial where you have the opportunity to present that information? I don't know if my colleagues would agree on this, but I think you make a good point when you say we don't know whether there's any relationship or any strength in saying that this profit, would it all be attributable to the dealings with Chadwell Animal Hospital in Maryland? But isn't that the purpose of a trial, to then defend against what they have put forward and say that their numbers don't stand up? Because we were different. We were treated differently. We weren't the norm. You can't use these boilerplate figures with regard to us. So how do you get around that? Why do you have a right just to walk away without having to defend yourself against these statistics? Well, Your Honor, whether or not there's a factual dispute in that sense, certainly we could challenge Antec's evidence at trial. But to be frank, one of the issues in this case was that Judge Bradar limited us in discovery very early on in the proceeding. And so we are limited to essentially what's in the record, Your Honor, is it. That's the evidence. That was what was produced in discovery and that's what we're dealing with. You're not limited to that at trial. We were. Won't you call witnesses and put witnesses up there and ask them? I mean, they didn't let you do a trial? I don't understand. Certainly in terms of the witnesses and there's deficient testimony of who those witnesses would be. But there's no further documentation in terms of. Are you suggesting there's other documentation that you wanted to get to for purposes of summary judgment that you weren't allowed to get to? That's correct, Your Honor. Well, why don't we send it back for completion of discovery and trial, Your Honor? Because we think that we have a valid issue, a valid argument on the liquidated damages clause in the contract that we can go through that. But I can tell you that it's mighty, mighty thin. I mean, it's basically an argument that you get you get your rebate back at discount that was the argument is that's anything beyond that is or that's a liquidated damage amount. I mean, it doesn't say anything about that being the exclusive measure of damages or that it would extend to damages for lost profits. And there's no indication that they couldn't compute the damages. You have to have that as part of the liquidated damage provision. Your Honor, I think the issue here is is a liquidated damages clause is presumed valid under California law. But under California law, doesn't a liquidated damages provision have to approximate damages, including expectation damages? Your Honor, I don't think there's a requirement that it specifically has to encapsulate expectation damages. The parties believe that what they were getting in exchange for the contract or what Antec was giving was an additional discount of 17 percent. That's what you get and what you get, what they get is more business on which they make profit. That's the expectation. Your liquidated damages argument does not allow for any expectation damages, correct? Correct. And so again, why do you think they were doing? Why do you think they were eager to enter a business with them, which business they weren't doing pro bono? Were they trying to make profit on it? Absolutely, Your Honor. So didn't that suggest, if it doesn't prove, it certainly strongly suggests the way expectation profits on their side. Otherwise, why would they have entered that contract with you? They certainly wanted the promise of exclusivity. But for what purpose? For what purpose? To make money off of you. And you had a course of dealing of how many years? Six years? We had a course of dealing of six years prior to signing this contract, yes. That would suggest that there was no aberration about this relationship. Is it that they had an ongoing relationship? They seemed to be happy with each other? Correct, Your Honor. And your client decided to take another opportunity? Right. Well, nothing changed. I just want to point out that nothing changed in terms of the positions of the parties prior to signing this contract other than in exchange for our promise, we got discounts of 14 percent or a rebate. If we go to the question of why they should not get summary judgment on their damages, and we leave aside for one second the decision that is unconscionable. Leave that out of this answer. I'm not saying you give them that. I'm saying leave it out of this answer. And we leave aside the claim of liquidated damages. Leave that aside for a second. Why would you win summary judgment on the question of their damages? They have presented testimony of damages. What about their testimony do you find wherein you win as a matter of law that they have not presented damages? Correct. Loss profits, damages in the nature of future loss profits require evidence of the gross amount, which again we've talked about is there, but the expenses that Antec would have had if Chadwell had not breached. They have evidence of that. They told you what, they break their expenses down in a little bit different way, but they have variable expenses and they have fixed expenses. Now they said largely the testimony of the CFO or CEO, I thought was a little bit complicated, a little bit convoluted, but I'm pretty sure this is what he or she said. Here's the projected revenue we would have gotten from them based on a 4 percent increase or something like that. He came up with the number based on historical trends. And then we take off the variable cost we have increased by that same basic number over the years. That would be our profit. Now I'm not sure that's true or not, but you, because I think you can make a claim, I think you can, they have to show fixed costs have to come out. But they have given us at least testimony from which a jury, looking at this testimony, a jury could find fixed costs and do the calculations. Why isn't that enough to get beyond your claim to defeat their summary judgment motion? Again, those are numbers for the overall company and servicing 16,000 different animal hospitals. It's not its net operating expenses for the entire company. It's the operating expenses for the entire company. Break it out. A salesman drives to Chadwell one day and then later in that day he drives to animal hospital B and then later in that day he drives to hospital C. He submits an expense report. You want them to submit somehow to allocate just the expenses for driving to Chadwell? They can certainly show that they have, for example, one regional salesperson that's assigned to X number of animal hospitals and divide that by... You said now you're spreading it over other hospitals. And then I'm saying to then divide it by the number of animal hospitals to get, you know, again... That's what they're doing here. They have computed their variable costs as a percentage of revenue and their fixed costs as a percentage of revenue. And they say, okay, with respect to Chadwell, our revenue is $100,000 and therefore we're entitled to a profit of $37,000. Is there any flaw in that? There's no evidence of its fixed or variable costs related to this contract in that number. It's to the company. If the company loses revenue and it will lose revenue, then you agree we shouldn't give them, our jury shouldn't give them their gross revenue. No, Your Honor. It has to be reduced by the cost of making those sales, right? Correct. And the management of the company in California or wherever they are is part of the cost of making those sales. Correct. So all of those costs have to be subtracted and those are national costs. Yes, Your Honor. But actually, if you just look at the national numbers, they haven't made any showing that they've actually lost money. It's quite likely that in 2010... They have not lost money. They don't lose money. They show profitability on their statement. But if we're only looking at overall company numbers, you know, we're talking about millions of billions of dollars of revenue... You suggested that, at least with respect to Chadwell, if I had somebody who's calling on him that I should divide by the number of hospitals in his region... With that specific cost, I'm just saying there could be evidence produced of that and there could have been evidence presented in terms of what those specific costs were. Why can't they keep their books on a company-wide basis? In other words, you have the same problem with the Vice President of Marketing. He helps design ads and so forth and his whole operation costs $57,000. Now, how are you going to allocate that to Chadwell? Your Honor... Nationally, how would you allocate that to Chadwell, conceptually? I'm sure that they have more books and more... How would you want him to do it? To show the underlying document, to show where they came up with that percentage. No, he's got the document, but he has this expense nationwide, $57,000 marketing expense. Wouldn't you want that somehow allocated to each... Correct. Okay, and the way they... Do that is the percentage of revenues. Correct. Right? Isn't that an acceptable accounting way to do it? I think so, yes. But there could be other ways. There could be other ways in which evidence could show that your client activities would not project to the profits they say. It's not in this record, but you could show they were moving from small animal to large animal and you could have evidence that that company did not do large animal services, which under the contract then you would be allowed to go somewhere else. You could show, you could show by evidence that those projected numbers to you are not applicable to you, but you haven't shown it and I'm not sure that would defeat summary judgment anyway, but you could have that. So that's another question, but it's just not in this record and I'm not sure that gets you past summary judgment anyway. That might be an argument on damages, but it would be an argument they were not entitled to the amount of damages they assert if you had that in the record, but it seems to me at this point to defeat summary judgment, I don't want to belabor this, but you have to show that their projection is not at least a projection which would allow a reasonable inference by a fact finder to say that was what a reasonable projection of lost profits based on your activity is. They don't, they don't have to prove this. See, the other side, they say they're entitled to summary judgment. They would have to prove as a matter of law that is the only way you can calculate it. Maybe that's a tough hill to climb, but you have to show that the way they project is unreasonable. It's not reasonable at all and to do that you would just say what? That they don't, in these charts, they don't talk about you specifically, your client specifically. That's what makes it, that's what factor most makes it unreasonable. Your Honor, I want you to answer that question. Okay, thank you, Your Honor. Again, we, what one thing would you say makes their projection as a matter of law unreasonable? The fixed costs and the interest expense are missing from the evidence. They're not. You mean as to your client? Correct. Okay. I don't understand how would you get fixed costs attributable to your client except as exhibit five. Let me restate my answer. Specifically, it would be variable costs as to Chadwell are missing, but fixed costs other than the percentage on the one page in the record, there's no other evidence of fixed costs either. And there was testimony from Bargmann that suggested that really he didn't, he didn't account for fixed costs and that they're not including fixed costs. But that could be rejected by the fact finder. His notion of no fixed costs could be rejected. And you could argue they can't get, they can't get gross revenues reduced just by variable costs. Correct. How did they compute the 29%? Did they use any of the specific transactions at Chadwell as part of that number? I would be speculating, Your Honor, but if there... No, there's a lot of sheets here. I just haven't studied them all. But I, I see here sheets that are limited to Chadwell, laboratory expenses and this type of thing. The only thing that's, the only evidence that there is related to Chadwell specifically is the actual invoices that Chadwell was issued while they were still doing business together. And, and there's nothing... They didn't take any expenses with respect to those, the cost of the lab reports and things. And so they computed their variable costs, selecting costs that are variable as they defined it, and computed it to be across the company, 29%, and forecast that that would be what would be allocable to Chadwell in the future. Correct. It's pulled from their SEC filing statement. Now, your argument is why shouldn't they get that? I mean, why shouldn't that be subject to trial? My argument is that it fails to, to include all of the elements of lost profits that is required for, before the jury can even consider a lost profits award. Now, if, if the record shows that they have fixed profits, fixed expenses, excuse me, couldn't the jury calculate the lost profit then? In theory, your honor, but again, we don't know exactly what those numbers are other than a percentage. Well, that's the only way any company carries them, right? When you evaluate Apple stock, they have gross revenues, and then they have expenses, they've broken down by lots of things, and they come out with net profit, and they attributable that to their sales. Correct, your honor. It's not a legitimate predictor for how they're going to do in the next store. I mean, it may not be perfectly accurate, but California law doesn't require, it requires a reasonable estimation, doesn't it? It requires reasonable certainty. It cannot be speculative. Yeah. Well, when I say speculation, I'm saying anything in the future is speculation. But you can, you can restrict it by history. And here we have a pretty good history of both Chadwell and of Amtech. Correct. But in almost all the California cases, I'll just add that particularly most of the cases where there are lost profits awards, it's a situation where the company's been put out of business. In this case, Amtech is still making a significant profit every year, which may not have changed since it lost Chadwell's contract. So you're suggesting because they lost all of your business, they didn't lose any money? They can't show that from the evidence in the record. If they picked up another service contract, they wouldn't have made a loss. They could pick that up anyway. That would be greater profit. That'd be mitigation, wouldn't it? Wouldn't that be counted for in mitigation? You lost $60,000, but you picked up client Y and you made 40 off them. You couldn't have done them. You had us. That's mitigation, isn't it? That doesn't say no damage. That just may address the amount of damage. What was the gross income amount projected here? A loss? The gross income, I believe, would have been $78,000 times four less what they earned in the first year. I don't have that figure off hand, but it's in the neighborhood of $250,000. Somewhere around, I think less than that, but somewhere around $230,000. So that if they got 37%, if that's an accurate figure, I'm not sure it is, because you may be able to reduce that by their filings, SEC filings. But if 37% is their profit, then that's roughly a third of the $250,000. You'd be looking at $75,000 or whatever. I'm at this terrible here, but... That's possible, Your Honor. Yes. I'm not going to verify the math. That's what this whole fight's about. $16,000 versus around $75,000, right? Your Honor, we think it's bigger than that because we think that there was discussions between the parties and the contract doesn't reflect that lost profits were contemplated. You can only recover damages that were contemplated at the time that the contract was signed and they weren't contemplated here. Yeah, but I'm talking about the max. In other words, you're prepared to say the $16,000 is all they can get. Correct. And they're arguing for lost profit, which ballpark might be $75,000, $80,000. So what I'm suggesting to you is the whole commercial fight we have in this court is a differential over somewhere in that space. Perhaps, but Antec has never come down off of a number that's closer to $200,000. Well, I don't want to get into the settlement figures, but it seems to me you can demand that they reduce that by their expenses. You don't want to give them a windfall, do you? Right. No, I'm not making any suggestion as to what settlement discussion there's been. Anyway, thanks. Time is up. We have Mr. Casey has a little more time. Thank you, Your Honor. You really won't do Mr Casey. Contemplate. No, aren't it? But just to clear up a couple of points, if I may, um, uh, council, uh, stated that the or thought that the, uh, lost revenue that we are, uh, asserting was the, uh, the was the 78 a year for the, for the remainder of the, the three year, the three years are left on the term. Uh, if you'd look at, uh, uh, page two 67 of the joint appendix actually has the, has the breakdown and what, what we did, uh, was the revenue number you're claiming the, well, my math is much worse than yours, Your Honor, but it looks like in the ballpark of, uh, 270, they, they, they had about where she was. Okay. It, it, it was it rather than taking the, uh, minimum annual average fee and multiplying it by the balance of the term. What, uh, what Antec did was, uh, take the 12 years of actual invoices, um, uh, extrapolate. I didn't want to get into how that was. It seems to me that both of you are recognizing that there's a loss of, uh, uh, gross revenue. And if it's in the two 75 ballpark in that ballpark, then the question is, uh, what is your profitability on that kind of revenue? And I was suggesting if it's in the third ballpark, 33%, you take a third of that and you get, uh, uh, whatever that comes out to 75, 90,000, 80,000. And the, uh, if that's so you guys aren't fighting over a lot of or, uh, or this, uh, our, but we'll do our job. I understood your honor. That part of the backstory is these, these are contracts that are similar to a number of other contracts. And if, but the point is you want to say, are you suggesting that all you entitled to is $75,000? No, no, your honor. We're not, we're, we're, we're, we are suggesting 198,000 is that you're suggesting that your loss profits are 200,000. We are suggesting that the number is 198,644. That's you mean you're, you're claiming 200,000 on 275,000 revenue because we have 200,000 profit on 275 revenue because we, as your honor pointed out, we have not added in factor back in the fixed cost. We have an explanation as to why that is. Uh, I would just ask that question because you're not as close as it might appear because it's 15,000 and 200,000. I'm trying to clarify the evidence suggests on the appendix page that sets out the fixed costs, then it is significantly lower than what you're claiming, isn't it? Can't have both ways. You can't get the profit without the fixed costs. And now it looks like this one document has saved you in terms of, of summary judgment on the issue of fixed costs. And now you're looks to me like you're trying to kind of walk away from it and say, well, we really get more because we didn't include this cost. No, your honor, respectfully, we're, we're again still talking about the two different motions, but the testimony of our vice president is he has an explanation for why we did not include fixed costs. So we, we are seeking a damage, which you're basically trying to do. It says it doesn't make any, it's not material. We're not going to include it, but that isn't the way you account for damages. Now there is this California case, which is very peculiar. It says in some circumstances, you only need to rely on variable costs, but I don't, I haven't done the theory of that and your honor to you respectfully that if you're seeking a lost profit, you have to demonstrate that you lost profits and that's just a factual matter. It's a, you can look at all the cases you want in most instances. It is your right. But my point, but my point to you, when I said those numbers, you're claiming your calculations, right at $200,000 during title two, the other side says 16, that's what you're claiming. The fixed cost question would in fact, which you don't concede at this point, but it would further reduce your claim of 200,000 if in fact it had to be applied. That is absolutely correct, your honor. But you aren't conceding that at this point, are you? No, I'm not. Judge Shed's almost got it settled, doesn't he? Well, he, he, he does. I'm just trying to work out, I'm trying to work out Judge Keenan, Judge Nima. After your career as a mediator, I would suggest you would make excellent accounting experts as well. And were, were, were you, uh, that, that gets to my, my, another one of my points. Were, were, were there to be an accounting opinion that would say, no, the, uh, the lost profits have to factor in things like fixed costs. Just let me say, I'm more interested in holding lawyers to account. Well, and I, I'm happy that you do that, your honor, but that, that, that's what's missing on the other side, which is why we think we're entitled summary judgment. But then to circle back for two seconds to the California law on how you calculate lost profits. Um, the, the lost profits, uh, analyses that, uh, that are, are referred to in the, in the briefs are, are almost exclusively after trial. And, uh, so we are in a position. Oh yeah, but that doesn't mean that, that, that doesn't establish you can't, you can't have summary judgment on lost damages before trial. That doesn't mean that at all. Well, there, there. Because you think you're entitled to it. You're right. But just because we say we're entitled to it doesn't mean that if we're wrong, you should move forward and you think you're entitled to it. Absolutely understood your honor. But as, as, as you're well aware, and as the court said in Downers Grove, the, the, the trial court is obligated to be Janice like and consider each of them entirely separately. Um, but I see I've run out of time. If the court has any further questions, I'm happy to address them. But other than that, say, thank you very much. All right. Thank you. We'll adjourn courts for today.
judges: Paul V. Niemeyer, Dennis W. Shedd, Barbara Milano Keenan